## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| WHOLE WOMEN'S HEALTH, et al. | § | |
| | § | |
| V. | § | A-14-CV-284-LY |
| | § | |
| DAVID LAKEY, M.D., et al. | § | |

## ORDER

Before the Court are Plaintiffs' Motion to Compel Disclosure of Written Communications between Vincent Rue and Defendants' Experts (Dkt. No. 115); State Defendants' Response in Opposition (Dkt. No. 124); and Plaintiffs' Reply (Dkt. No. 137), which was referred to the undersigned for resolution on July 29, 2014, pursuant to 28 U.S.C. §636(b)(1)(A), FED. R. CIV. P. 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. The Court held a hearing on the motion on July 31, 2014. Because this matter was set for trial on August 4, 2014, the Court ruled from the bench on the motion. Although the Court has already resolved this motion both at the hearing and in subsequent orders, *see* Dkt. Nos. 142, 156, the Court now enters the following opinion to fully explain its reasoning.

## I. BACKGROUND

In this case, Plaintiffs allege facial and as-applied constitutional challenges to Texas House Bill No. 2,[1] contesting the constitutionality of the admitting privileges requirement and the provisions that requires abortion facilities to meet the minimum Texas standards for ambulatory surgical centers ("ASC"). The ASC requirement becomes effective September 1, 2014.

---

[1] Act of July 12, 2013, 83rd Leg., 2d C.S., ch. 1, §§ 1–12, 2013 Tex. Sess. Law Serv. 4795–4802 (codified at TEX. HEALTH & SAFETY CODE §§ 171.0031, 171.041–048, 171.061–064, & amending §§ 245.010–.011; TEX. OCC. CODE amending §§ 164.052 & 164.055).

In its motion, Plaintiffs move to compel production of any documents or electronic communications concerning or reflecting communications between Mr. Vincent Rue, Ph.D. ("Rue"), and any testifying expert hired by State Defendants.  Additionally, Plaintiffs seek a short, telephonic deposition of Dr. Mayra Thompson, one of the State Defendants' testifying experts whose deposition occurred before Rue's involvement was revealed in this case.  At the hearing, the undersigned granted in part and denied in part Plaintiffs' motion.  *See* Dkt. No. 142.  More specifically, the Court granted Plaintiffs' request to compel the production of documents or electronic communications between Rue and any of State Defendants' testifying experts, but denied Plaintiffs' request to re-depose Dr. Mayra Thompson.  To the extent State Defendants wished to withhold any communications between Rue and State Defendants' testifying experts, such documents were to be submitted *in camera* for the Court's review along with a motion to withhold those documents.  *Id.* On August 4, 2014, the Court received and reviewed *in camera* documents submitted by the State Defendants.  The Court issued an order that same day granting in part and denying in part State Defendants' Motion to Withhold.  *See* Dkt. No. 156.

## II.  ANALYSIS

The parties' dispute arises out of information revealed during Plaintiffs' depositions of State Defendants' testifying experts, which indicated that Rue was involved in the preparation of at least some of the reports submitted by State Defendants' testifying experts and had communicated with the experts on several occasions.  When Plaintiffs' counsel questioned State Defendants' testifying experts regarding their communications with Rue, the State's counsel claimed that such communications were privileged and instructed their experts not to disclose their communications with Rue.  The parties contacted the Court telephonically from the deposition to raise the issue, and

2

the Court  conducted an on-the-record telephonic hearing on the matter.  Plaintiffs argued that the communications were vital to determining the reliability of the expert reports submitted by State Defendants.  On the record, the Court granted Plaintiffs' request to ask State Defendants' testifying experts about their oral communications with Rue.  In doing so, the Court left open the question of whether written communications between Rue and State Defendants' testifying experts were discoverable.  Presumably unsatisfied with the testimony of State Defendants' testifying experts regarding their communications with Rue, Plaintiffs filed this motion to seek discovery of the written communications between the experts and Rue.

With regard to Plaintiffs' motion, the primary issue is whether the communications between State Defendants' testifying experts and Rue are protected by the work product doctrine under the Federal Rules of Civil Procedure.  Plaintiffs contend that such written communications are not protected because Rule 26 does not "afford work product protection to communications between a party's testifying experts who must submit a report pursuant to Rule 26(a)(2)(A) and other agents or representatives of that party."  Dkt. No. 115 at 8.  State Defendants disagree, arguing that the communications are privileged and criticizing Plaintiffs for engaging in a "fishing expedition" to discredit State Defendants' experts by their association with Rue.  Dkt. No. 124.  After reviewing the parties' arguments, both in writing and at the hearing, and the relevant case law, the Court concluded that communications between State Defendants' testifying experts and Rue are discoverable, subject to the limitations provided in Rules 26(b)(4)(B)–(C).

The relevant provisions of the federal rules at issue are set forth in Rules 26(b)(3)–(4).  Rule 26(b)(3)(A) codifies the work product doctrine, excluding from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial."  Rule 26(b)(4) discusses the scope

of protections afforded to experts and shields from discovery three specific categories of information: (1) draft reports or disclosures of testifying experts; (2) communications between testifying experts who are required to provide a report under Rule 26(a)(2)(B) and the party's attorneys; and (3) facts known or opinions held by a non-testifying expert.  FED. R. CIV. P. 26(b)(4)(B)–(D).  Although the Fifth Circuit has not yet addressed the interplay of these provisions as applied to whether communications between a party's testifying expert and non-attorney representative are discoverable, several other circuit courts have opined on this issue recently, all in related cases.  *See Republic of Ecuador v. Mackay*, 742 F.3d 860 (9th Cir. 2014); *Republic of Ecuador v. Hinchee*, 741 F.3d 1185 (11th Cir. 2013); *Republic of Ecuador v. Bjorkman*, 735 F.3d 1179 (10th Cir. 2013).

In each of these decisions, the circuit court engaged in an extensive review of both the language of Rules 26(b)(3)–(4) and the associated Advisory Committee Notes.  In *Bjorkman*, Chevron had retained Bjorn Bjorkman, an ecologist, on litigation matters pertaining to activities that had occurred in the Republic of Ecuador that had allegedly caused environmental contamination in the country.  *Bjorkman*, 735 F.3d at 1181.  As an expert for Chevron, Bjorkman had prepared and received many documents and communications in anticipation of litigation.  *Id.*  The documents and communications had come "from a variety of sources in Chevron's litigation team, including lawyers, in-house scientists, consultants, and expert witnesses."  *Id.* (internal quotations omitted). The question was whether Chevron could withhold documents or communications that (1) were not drafts of Bjorkman's expert report or disclosures or (2) did not contain communications between Chevron's attorneys and Bjorkman.  *Id.* at 1181–82.  The magistrate judge held that Chevron must produce communications between Bjorkman and non-attorneys and that work-product protection only applied to those documents covered under Rules 26(b)(4)(B)–(C).  *Id.*

4

In reviewing the lower court's decision, the Tenth Circuit declined to adopt Chevron's contention that Rule 26(b)(3)(A) included all materials prepared by or for an expert witness in anticipation of litigation.  First, the court noted that the language of Rule 26(b)(3) failed to clearly show that experts were to be included.  *Id.* at 1184.  It observed that Rule 26(b)(3)'s phrase, "party or its representative," implies agency and that each of the examples listed by Rule 26(b)(3) could act in an agency or fiduciary capacity on behalf of the party itself.  *Id.*  Second, the court explained that previous enactments of Rule 26(b)(3) explicitly stated that expert information was not to be included within the work product doctrine.  *Id.* at 1185 (citing FED. R. CIV. P. 26(b)(4) advisory committee's notes (1970 amendments)).  Finally, the Tenth Circuit rejected Chevron's contention that the 2010 revisions to Rule 26 "restored broad work-product protection to expert materials."  *Id.*  The court observed that had the drafters intended Rule 26(b)(3) to be read expansively with regard to expert materials, "they could have chosen to bolster the protections afforded under [Rule 26(b)(3)] rather than providing two explicit protections in subdivision (b)(4)."  *Id.* at 1186.  As such, the court held that Rules 26(b)(4)(B)–(C) represented the exclusive protections given to expert trial preparation materials.

In *Mackay*, Chevron had argued that the language of Rule 26(b)(3) applied to expert materials that were not covered by the attorney-expert communication or draft report protections of Rule 26(b)(4).  *Mackay*, 742 F.3d at 866.  According to Chevron, the federal rules did not provide any exceptions beyond the narrow requirements of "facts or data" and the specific exemption categories of attorney-client communications that would permit discovery of other documents prepared by its testifying experts.  *Id.*  The Ninth Circuit found Chevron's arguments unconvincing, noting that the rules explicitly separate protections given to "Materials" in Rule 26(b)(3) from protections afforded

5

to "Experts" in Rule 26(b)(4).  *Id.* at 866–67.  Additionally, the inclusion of the term "expert" in Rule 26(b)(4) but not Rule 26(b)(3) indicated that the omission of experts from the latter rule was intentional.  *Id.*  The Ninth Circuit further emphasized that if Rule 26(b)(3) were to be read as broadly as Chevron suggested, such an interpretation would render the provisions of Rule 26(b)(4) protecting attorney-expert communications and draft reports redundant.  *Id.* at 867.

The Eleventh Circuit's decision in *Hinchee* is very similar to the two circuit decisions already discussed.  In *Hinchee*, the question was whether notes prepared by the testifying expert as well as email communications between the testifying expert and a group of non-attorneys were discoverable.  *Hinchee*, 741 F.3d at 1189.  Chevron had argued that the personal notes of its testifying expert and the expert's communications with non-attorneys enjoyed work product protection.  *Id.*  In rejecting Chevron's contention, the Eleventh Circuit also found it notable that the term "expert" was missing from Rule 26(b)(3).  *Id.* at 1190.  The court further highlighted the fact that immediately after Rule 26(b)(3) was an entire subsection dealing with the protections afforded to "experts" under Rule 26(b)(4).  *Id.*  Furthermore, the court also emphasized that to apply the provisions of Rule 26(b)(3) to testifying experts would (1) render certain provisions of Rule 26(b)(4) superfluous and (2) "undermine the drafters' deliberate choice in Rules 26(b)(4)(B) and (C) to extend work-product protection to only draft expert reports and attorney-expert communications."  *Id.* at 1191–92.  Consequently, the Eleventh Circuit affirmed the decision of the district court ordering production of those materials, subject to an *in camera* review of any *attorney* core opinion work-product protection.  *Id.* at 1195.

In addition to reviewing the language of Rule 26, each of the circuit decisions also found support in the Advisory Committee Notes.  At its core, the 2010 amendments to Rule 26 were meant

to protect *attorney* opinion work product.  *See, e.g.*, *Mackay*, 742 F.3d at 870 ("[T]he driving

purpose of the 2010 amendments was to protect opinion work product—i.e., *attorney* mental

impressions, conclusions, opinions, or legal theories—from discovery.") (emphasis added); *Hinchee*,

741 F.3d at 1195 (noting that "the 2010 amendment to Rule 26(a)(2)(B) was intended to protect the

opinion work-product of *attorneys* in the context of expert discovery") (emphasis added); *Bjorkman*,

735 F.3d at 1187 ("[T]he underlying purpose of the 2010 revision was to return the work-product

doctrine to its traditional understanding. . . . Rule 26(b)(4), especially subdivision (C), restores the

core understanding that the work-product doctrine solely protects the inner workings of an *attorney's*

mind.") (emphasis added).  In drafting Rule 26, the Committee sought to balance the need for

protecting such information with "the need to provide an adversary with sufficient information to

engage in meaningful cross-examination and prepare a rebuttal." *Mackay*, 742 F.3d at 870.  Indeed,

the Advisory Committee Notes contain numerous statements that (1) encourage broad discovery into

the opinions held by a testifying expert and (2) limit the protection to the opinion work-product of

*attorneys*.

 For example, Rules 26(b)(4)(B) and (C) are not intended to "impede discovery about the

opinions to be offered by the expert or the development, foundation, or basis of those opinions."

FED. R. CIV. P. 26(b)(4) advisory committee's notes (2010 amendments).  "Inquiry about

communications the expert had with *anyone other than the party's counsel* about the opinions

expressed" are not exempted from discovery. *Id.* (emphasis added).  Furthermore, Rule 26(b)(4)(C)

is "designed to protect *counsel's* work product and ensure that *lawyers* may interact with retained

experts without fear of exposing those communications to searching discovery." *Id.* (emphasis

added).  This protection "is limited to communications between an expert witness required to

7

provide a report under Rule 26(a)(2)(B) and the *attorney* for the party on whose behalf the witness will be testifying." *Id.* (emphasis added).  Accordingly, the protections afforded to communications between a testifying expert and a non-attorney are certainly not as broad as State Defendants suggest in their argument.

Reviewing the federal rules and relevant case law, the Court found the reasoning set forth above persuasive.  Here, Plaintiffs are seeking communications between State Defendants' expert witnesses and Rue.  Nothing in the recent decisions discussed previously suggests that the work product doctrine extends to protect such communications.  Although State Defendants might contend that Rue is the individual claiming privilege, the fact of the matter remains that Plaintiffs are seeking communications between the State's testifying experts and a non-attorney.  Rule 26(b)(4) is clear about what is and what is not protected with regard to experts.  Furthermore, in considering the facts of this case, a major obstacle for the Court was that State Defendants were never able to precisely identify Rue's role in the litigation.   The evidence before the Court demonstrates that State Defendants have attempted to characterize Rue as a consulting expert, agent, and consultant.  When the Court inquired precisely what duties Rue had in this case, State Defendants responded with a variety of tasks, including facilitating communication between the testifying experts and the State's counsel, "polishing" the testifying experts' reports, and identifying the experts themselves.  Additionally, State Defendants also represented that Rue was an expert "in this type of litigation." While it was clear that Rue had been retained by State Defendants, it was not obvious how Rue was contributing to the litigation.  However, regardless of the precise nature of Rue's involvement, it is clear that Rue is not an attorney.  Furthermore, to the extent that Rue has influenced the testimony of State Defendants' testifying experts, such information is certainly relevant in order for Plaintiffs

8

to adequately assess the reliability of those opinions. Accordingly, the Court concluded that communications between State Defendants' testifying experts and Rue are discoverable, except as provided in Rules 26(b)(4)(B)–(C). The Court permitted State Defendants to withhold from discovery communications related to any draft reports or disclosures of its testifying experts as well as any communications between the States' counsel and the testifying experts. *See* Dkt. No. 156.

To the extent State Defendants point to this Court's decision in *Nat'l W. Life Ins. Co. v. W. Nat. Life Ins. Co.*, No. A-09-CA-711, 2011 WL 840976 (W.D. Tex. Mar. 3, 2011), as further support for its contention that communications between Rue and State Defendants' testifying experts are not discoverable, the Court finds the comparison unconvincing. In *Nat'l W. Life Ins. Co.*, the undersigned considered whether email communications between the defendant's testifying expert and its retained, non-testifying expert, who had consulted with the testifying expert, were protected from discovery. Relying on Rule 26(b)(4)(D), the Court held that "non-fact or data" email communications between the two experts were not discoverable because Plaintiff had not demonstrated that exceptional circumstances warranted discovery of those communications. The decision in *Nat'l W. Life Ins. Co.*, however, carries little weight in this case because Rue is not an expert. As discussed previously, although the precise nature of Rue's involvement is unclear, the Court can conclude that Rue is not an "expert" (consulting or otherwise) as understood pursuant to the Federal Rules of Civil Procedure based upon State Defendants' description of Rue's role in this case. Indeed, State Defendants no longer appear to argue that Rue is an "expert" in any capacity with regard to this case. This situation is distinguishable from that in *Nat'l W. Life Ins. Co.*, where the Court evaluated whether email communications between the testifying expert, a forensic linguist, and the non-testifying expert on linguistics were subject to discovery. Because Rule 26(b)(4)(D)

does not apply to Rue, the Court finds State Defendants' reliance upon this Court's decision in *Nat'l W. Life Ins. Co.* to be misplaced.

Finally, given that the Court was ordering production of written communications between State Defendants' testifying experts and Rue and the short time frame, the Court denied Plaintiffs' request to re-depose Dr. Mayra Thompson. Any inquiry into Thompson's communications with Rue could be explored at trial and through the produced documents.

### III. CONCLUSION

Based on the reasoning set forth above, the Court **GRANTED IN PART** and **DENIED IN PART** Plaintiffs' Motion to Compel Disclosure of Written Communications between Vincent Rue and Defendants' Experts (Dkt. No. 115).

SIGNED this 21st day of August, 2014.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE