IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2019 AUG -9  PM 4: 34

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____
DEPUTY

| | |
|---|---|
| WHOLE WOMAN'S HEALTH, AUSTIN WOMAN'S HEALTH CENTER, KILLEEN WOMAN'S HEALTH CENTER, NOVA HEALTH SYSTEMS D/B/A REPRODUCTIVE SERVICES, AND SHERWOOD C. LYNN, JR., M.D., PAMELA J. RICHTER, D.O., AND LENDOL L. DAVIS, M.D., EACH ON BEHALF OF THEMSELVES AND THEIR PATIENTS, <br><br> PLAINTIFFS, <br><br> V. <br><br> JOHN HELLERSTEDT, COMMISSIONER OF THE TEXAS DEPARTMENT OF STATE HEALTH SERVICES, AND STEPHEN BRINT CARLTON, EXECUTIVE DIRECTOR OF THE TEXAS MEDICAL BOARD, IN THEIR OFFICIAL CAPACITIES,[1] <br><br> DEFENDANTS. | CAUSE NO. 1:14-CV-284-LY |

## ORDER ON MOTIONS FOR ATTORNEY'S FEES, NONTAXABLE EXPENSES, AND COSTS

Before the court is the above-styled and numbered action, in which Plaintiffs, Texas abortion

providers, sued State of Texas officials and local prosecutors, challenging the constitutionality of two

---

[1] In January 2016, John Hellerstedt, Commissioner of the Texas Department of State Health Services, replaced Kirk Cole, the Interim Commissioner of the Texas Department of State Health Services. *See* Fed. R. Civ. P. 25(d). Cole replaced David Lakey, a named defendant in this action, in February 2015. *Id.* Also, Mari Robinson, the former Executive Director of the Texas Medical Board and a named defendant in this action, resigned her position in September 2016. Stephen Brint Carlton was named by the Texas Medical Board as its Executive Director, effective as of April 23, 2018, replacing Scott Freshour, who until then served as the Interim Executive Director of the Texas Medical Board. *Id.*

provisions of 2013 House Bill 2 ("H.B. 2"), which relate to the regulation of abortion procedures, providers, and facilities.[2] *See* 42 U.S.C. § 1983; Act of July 12, 2013, 83rd Leg., 2d C.S. ch. 1, 2013 Tex. Gen Laws 5013. The laws at issue require: (1) physicians who perform abortions to have admitting privileges at a nearby hospital; and (2) facilities in which abortions are performed must meet the state standards for ambulatory-surgical centers. *Id.* at Ch. 1 § 2, 2013 Tex. Gen. Laws at 5013-14 (codified at Tex. Health & Safety Code Ann. § 171.0031(a)(1)(A); 25 Tex. Admin. Code Ann. §§ 139.53(c)(1), 139.56(a)(1)) (admitting privileges); *id.* at Ch. 1 § 4; 2013 Tex. Gen. Laws at 5017 (codified at Tex. Health & Safety Code Ann. § 245.010(a); 25 Tex. Admin. Code § 139.40) (abortion facilities must meet ambulatory-surgical-center standards).

Pending before the court are Whole Woman's Health's requests for attorney's fees and nontaxable expenses and its bill of costs, all of which the State opposes.[3] *See* 28 U.S.C. §§ 1988(b);

---

[2] Plaintiffs are Whole Woman's Health, Austin Women's Health Center, Kileen Women's Health Center, Nova Health Systems d/b/a Reproductive Services, and Sherwood C. Lynn, Jr., M.D., Pamela J. Richter, D.O., and Lendol L. Davis, M.D., each on behalf of themselves and their patients (collectively "Whole Woman's Health"). The court refers to Defendants Hellerstedt and Carlton collectively as "the State."

Whole Woman's Health named as Defendants several local prosecutors charged with enforcing the laws at issue, including David Escamilla, County Attorney for Travis County; Jamie Esparza, District Attorney for El Paso County; Rene Guerra, Criminal District Attorney for Hidalgo County; James E. Nichols, County Attorney for Bell County; Susan D. Reed, Criminal District Attorney for Bexar County; Joe Shannon, Jr. Criminal District Attorney for Tarrant County; and Craig Watkins, Criminal District Attorney for Dallas County, in their official capacities (collectively "Local Prosecutors"). Whole Woman's Health and the Local Prosecutors filed a joint motion to dismiss the Local Prosecutors, which the court granted on May 19. Therefore, none of Whole Woman's Health's claims alleged against the Local Prosecutors remain in this action.

[3] Before the court are Whole Woman's Health's Plaintiffs' Motion for Attorney's Fees, Memorandum in Support, and Affidavits in Support of the Motion (Clerk's Document Nos. 245, 246 & 268), State Defendants' Response to Plaintiffs' Motion for Attorney's Fees and Costs (Clerk's Document No. 278), Plaintiffs' Reply Memorandum in further support of Plaintiffs' Motion For Attorney's Fees And Plaintiffs' Bill Of Costs (Clerk's Document No. 285), the Bill of Costs (Clerk's

1920; Fed. R. Civ. P. 54; Loc. R. W.D. Tex. CV-7(j), CV-54. Whole Woman's Health, by two motions and a reply, seeks attorney's fees in the amount of $4,498,941.75 for 6,043.65 hours. Additionally, Whole Woman's Health seeks to recover nontaxable expenses in the amount of $159,496.06. Whole Woman's Health requests adjusted costs of $95,872.80.

In reaching the findings and conclusions that follow, the court has carefully reviewed Whole Woman's Health's motions, the State's objections, Whole Woman's Health's reply, the extensive number of supporting documents, Whole Woman's Health's bill of costs, the State's objections to the bill of costs, the record of the case as a whole, and the applicable law.

## PROCEDURAL BACKGROUND

Whole Woman's Health filed this action on April 2, 2014, moved for a preliminary injunction on April 3, and requested a temporary restraining order on April 14.[4]  The court held a hearing on April 16, at which all parties were represented by counsel. At the hearing, the parties agreed to discuss an expedited trial schedule for the case, and Whole Woman's Health represented that as the case would proceed to trial in an expedited manner, it would withdraw the request for a preliminary injunction. In light of the representations, the court denied the request for a temporary restraining order and deemed the request for a preliminary injunction withdrawn. On April 22, the court conducted a telephone conference in which the lawyers for Whole Woman's Health and the

---

Document No. 274), and the State's Objections to the Plaintiffs' Bill of Costs (Clerk's Document No. 282).

Also before the court are Plaintiffs' Supplemental Application for Attorney's Fees and Costs (Clerk's Document No. 287), and Defendants' Response To Plaintiffs' Supplemental Application For Attorney's Fees And Costs (Clerk's Document No. 288).

[4]  Several impactful portions of the laws at issue were to become effective September 1, 2014.

State participated. The parties discussed discovery matters and the schedule for the case, with all agreeing to dates for a final pretrial conference on August 1, and trial to the bench beginning August 4. The court signed an agreed scheduling order on April 28.

Defendants Lakey and Robinson, predecessors of Hellerstedt and Carlton, moved to dismiss several claims alleged against them for failure to state a claim and contending that *res judicata* applied and barred several claims asserted by Whole Woman's Health. *See* Fed. R. Civ. P. 12(b)(6). In June 2014, the parties appeared before a magistrate judge, who, following a hearing, resolved certain discovery disputes among them. But the parties continued to argue over discovery. The court conducted another telephone conference on July 8, but no resolution resulted. The parties did not resolve a non-party discovery dispute, and, on July 21, the court again referred the discovery disputes to the magistrate judge. The third-party's motion for protective order was denied on July 24. The parties discovery disputes continued; this time regarding Whole Woman's Health's motion to compel production of any documents or electronic communications between Vincent Rue, a non-lawyer consulting expert hired by the State, and any testifying experts hired by the State, and another matter regarding answers to interrogatories. Yet again, the court referred discovery issues to the magistrate judge, who conducted a hearing on the matters, and on July 31, rendered written orders granting in part and denying in part the parties' requests.

On August 1, the court conducted a final pretrial conference and made preliminary rulings related to trial. The State moved for reconsideration of the magistrate judge's orders, which the court denied. On August 1, the court denied in part and granted in part the State's motion to dismiss.

The case proceeded to a four-day trial to the bench and, on August 29, 2014, the court determined that portions of H.B. 2 were unconstitutional, ordered permanent injunctions enjoining

4

enforcement, and rendered final judgment. *Whole Woman's Health v. Lakey*, 46 F. Supp. 3d 673 (W.D. Tex. 2014). The same day, the State filed a notice of appeal. On August 31, 2014, the State moved the court to stay its judgment pending appeal.

Then at 11:59 p.m. on August 31, the State also moved the United States Court of Appeals for the Fifth Circuit for a stay pending appeal and requested expedited consideration of its appeal of the final judgment. On September 3, the circuit court temporarily stayed this court's judgment, ordered briefing, and set oral argument regarding the request for a stay. On September 8, this court denied the State's request to stay its judgment. On September 10, Whole Woman's Health filed a cross-appeal of the final judgment. After briefing and oral argument on the State's motion for stay, the circuit court stayed this court's injunction pending final disposition of the appeal. *Whole Woman's Health v. Lakey*, No. 14-50928 (5th Cir. Oct. 2, 2014) (revised Oct. 8, 2014).[5]

Whole Woman's Health appealed the circuit court's order to the Supreme Court of the United States, which vacated the circuit court's stay with regard to the injunction affecting abortion clinics in McAllen and El Paso, Texas and the ambulatory-surgical-center requirements but maintained the remainder of the court's stay. *Whole Woman's Health v. Lakey*, 574 U.S. ____, 135 S.Ct. 399 (2014).

Following oral argument, the circuit court on June 9, 2015, affirmed in part and reversed in part this court's judgment. *See Whole Woman's Health v. Cole*, 790 F.3d 563 (5th Cir.), *modified*, 790 F.3d 598 (5th Cir. 2015). On June 10, Whole Woman's Health moved the circuit court to stay its mandate pending the filing of a petition for writ of certiorari to the Supreme Court. A divided

---

[5] Additionally, the circuit, noting that Whole Woman's Health joined the State's request for expedited consideration of the appeal, granted the request on October 17.

circuit court denied the request to stay the court's mandate. *Id.* at No. 14-50928 (5th Cir. June 19, 2015).

Whole Woman's Health requested the Supreme Court to stay the circuit court's mandate, pending the timely filing and disposition of a petition for writ of certiorari. The Supreme Court granted the request for stay. *Whole Woman's Health v. Cole*, 576 U.S. ___, 135 S.Ct. 2923 (2015). Whole Woman's Health filed a petition for certiorari on September 2, 2015, which the Supreme Court granted on November 19, 2015. Following briefing, the Supreme Court heard oral argument on March 2, 2016. On June 27, 2016, the Supreme Court held the physician-admitting-privileges and the surgical-center requirements imposed undue burdens on women's right to seek pre-fetal-viability abortions, these requirements were unconstitutional on their face, and remanded the action to the circuit. *Whole Woman's Health v. Hellerstedt*, 579 U. S. ___; 136 S.Ct. 2292 (2016).

On remand, the circuit vacated this court's judgment and remanded the action to this court for further proceedings. *Whole Woman's Health v. Hellerstedt*, 833 F.3d 565 (5th Cir. 2016). This court then rendered a final judgment in accordance with the Supreme Court's judgment and declared the contested portions of H.B. 2 unconstitutional, effectively reimposing the previously enjoined enforcement of the laws. *Whole Woman's Health v. Hellerstedt*, No. 1:14-CV-284-LY (W.D. Tex. Oct. 11, 2016). This court ordered that any claim for attorney's fees would be determined post judgment and awarded Whole Woman's Health its costs of court. *Id.*

## FEE SHIFTING IN CIVIL-RIGHTS ACTIONS

In federal civil-rights actions "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988. Although the language is discretionary, the Supreme Court has held that prevailing parties should

6

be awarded reasonable fees, absent exceptional circumstances. *See Hensley v. Eckerhart*, 461 U.S. 430, 429 (1983). The purpose of Section 1988 is to ensure "effective access to the judicial process" for persons with civil-rights grievances. *Id.* The amount of the fee is to be determined on the facts of each case. *Id.* "Unfortunately, the statute does not explain what Congress meant by a 'reasonable' fee, and therefore the task of identifying an appropriate methodology for determining a 'reasonable' fee was left for the courts." *Perdue v. Kenny A.*, 559 U.S. 542, 550 (2010).

Civil-rights plaintiffs are prevailing parties "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Texas State Teachers Assoc. v. Garland ISD*, 489 U.S. 782, 789 (1989) (quoting *Hensely*, 461 U.S. at 433). A plaintiff prevails "when actual relief on the merits of [the plaintiff's] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Lefemine v. Wideman*, 568 U.S. 1,4 (2012) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992)). "[A]n injunction or declaratory judgment, like a damages award, will usually satisfy that test." *Id.* (citing *Rhodes v. Stewart*, 488 U.S. 1, 4 (1988)). Moreover, a prevailing party may also recover "[a]ll reasonable out-of-pocket expenses, including charges for photocopying, paralegal assistance, travel, and telephone . . . because they are part of the costs normally charged to a fee-paying client." *Deleon v. Abbott*, 687 Fed. Appx. 340, 342 (5th Cir. 2017) (quoting *Associated Builders & Contractors of La., Inc. v. Orleans Par. Sch. Bd.*, 919 F.2d 374, 380 (5th Cir. 1990)). Expenses that "are extravagant or unnecessary" will be disallowed. *Id.* (quoting *Curtis v. Bill Hanna Ford, Inc.*, 822 F.2d 549, 553 (5th Cir. 1987)).

The final relief granted Whole Woman's Health materially altered the relationship between the parties in a way that directly benefitted Whole Woman's Health. Further, the relief Whole

Woman's Health obtained was substantial and establishes Whole Woman's Health as the prevailing party. The court will award Whole Woman's Health its reasonable attorney's fees and nontaxable expenses and resolve the State's objections to the Bill of Costs.

## WHOLE WOMAN'S HEALTH'S REPRESENTATION

Many attorneys and others worked on behalf of Whole Woman's Health in this action, including attorneys and staff for the Center for Reproductive Rights (the "Center"), Morrison & Foerster LLP, O'Connell & Soifer LLP, Bucy & Muse, PLLC, and Leah M. Litman. By the court's count, 18 attorneys with varying amounts legal experience and wide ranges of skill were involved at one time or another.

Stephanie Toti of the Center and J. Alexander Lawrence of Morrison & Foerster served as co-lead counsel for Whole Woman's Health. Toti led case strategy, assisted in the discovery process, took the lead in drafting pleadings and briefs, and argued before the circuit and Supreme Court. Lawrence led the management of the discovery process and trial group, participated in forming the case strategy, provided substantial input on pleadings and briefs, and served as second chair during oral arguments. They were assisted by other attorneys at the Center and Morrison & Foerster.

Jan Soifer and Patrick J. O'Connell of O'Connell & Soifer served as local counsel for Whole Woman's Health. They advised Whole Woman's Health on local practices and procedures, participated in forming the case strategy, participated in the trial, and provided substantive input on pleadings and briefs.

8

John H. Bucy II of Bucy & Muse, PLLC provided advice about the administrative practices and procedures used by the Texas Department of State Health Services and the Texas Medical Board and assisted with discovery.

Leah M. Litman, a law professor and former Supreme Court of the United States law clerk, advised Whole Woman's Health on Supreme Court practice and provided substantive input on the briefing presented to the Supreme Court.

All attorneys submitted declarations in support of their requests for attorney's fees and nontaxable expenses.

## STATE'S OBJECTIONS TO DECLARATIONS SUPPORTING MOTION FOR ATTORNEY'S FEES

Whole Woman's Health submitted 11 declarations in support of its request for attorney's fees. The State objects to several specific paragraphs contained within the declarations. Specifically, the State objects that personal knowledge is lacking and there is a failure to lay a proper foundation as to several portions of the declarations. The State argues that the declaration of Susan Hays is essentially an expert report on the culture of abortion in Texas and should be stricken in its entirety. *See* Fed. R. Evid. 702(b). The court has carefully reviewed each of the declarations and considered only the portions of each that factually assist the court in determining the award of reasonable attorney's fees, nontaxable expenses, and costs of court. The court will not here discuss each declaration line by line. The State's objections are overruled.

## CALCULATION OF ATTORNEY'S FEES

"A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of the fee award." *Hensley*, 461 U.S. at 437. Because the

parties totally failed to reach a reasonable resolution of these issues, Whole Woman's Health "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Id.*

Because of the parties' failure to reach a resolution of the amount of reasonable attorney's fees, they have ignored the Supreme Court's suggestion and have, indeed, turned this case into a second major litigation, resulting in this court's spending substantial time dealing with an issue that any lawyer who took his or her oath seriously could resolve, if exercising professional behavior. The court here expresses its extreme disappointment in the level of professionalism exhibited by the lawyers in this case.

In determining the amount of attorney's fees, the court does not "achieve auditing perfection," as the "essential goal of shifting fees is to do rough justice." *DeLeon*, 687 Fed. Appx. at 342 (quoting *Cantu Servs., Inc. v. Frazier*, Fed. Appx. 339, 341 (5th Cir. 2017)). As the court is familiar with all aspects of this case, the court will use that knowledge in calculating and allocating the attorneys' time and determining a reasonable attorney's fee award. Although the court here addresses many of the State's objections to Whole Woman's Health's requests for attorney's fees and nontaxable expenses, the court will not act as a "green-eyeshade accountant," *id.* at 343 (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)), but will proceed to provide a reasoned explanation of the reasons for the fee award.

"The extent of a plaintiff's success is a crucial factor in determining the amount of an award of attorney's fees under 42 U.S.C. § 1988." *Hensley,* 461 U.S. at 438. In determining the amount of the attorney's fees awarded to Whole Woman's Health, the court "has considered the relationship between the amount of the fee awarded and the results obtained." *Id.* at 437. The court observes that

"results obtained" is often the forgotten part of the attorney's-fees calculus. The review of hours expended, hourly rates, number of lawyers, and paralegals and other support personnel and what they charge in a case overwhelm what to this court seems to be the more basic questions: what result was obtained, and what was the *reasonable* amount of effort and resources necessary to reach that result? Although the court will consider all of the factors and guidance precedent dictates, these questions will be foremost in the court's mind.

A court calculates attorney's fees using a two-step process. *See Jimenez v. Wood Cnty., Tex.,* 621 F.3d 372, 379 (5th Cir. 2010), *on reh'g en banc*, 660 F.3d 841 (5th Cir. 2011).[6] First, the court calculates the "lodestar" amount, by "multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work." *Black v. SettlePou, P.C.,* 732 F.3d 492, 502 (5th Cir. 2013).

Compensable hours reasonably spent are determined from the attorney's time records, and the applicant should exercise "billing judgment" with respect to hours worked. *Hensely,* 461 U.S. at 437.

> Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant. The proper remedy for omitting evidence of billing judgment does not include a denial of fees, but, rather a reduction of the award by a percentage intended to substitute for the exercise of billing judgment.

*Saizan v. Delta Concrete Prods. Co.,* 448 F.3d 795, 799 (5th Cir. 2006). In so doing, the court considers whether the attorneys demonstrated proper billing judgment by "writing off unproductive,

---

[6] Part V of *Jimenez,* 621 F.3d at 379-80, which discussed the circuit's method for calculating attorney's fees, was reinstated following *en banc* rehearing. *Jimenez,* 660 F.3d 844 n. 1.

excessive, or redundant hours." *Walker v. United States Dep't of Housing and Urban Dev.*, 99 F.3d 761, 769 (5th Cir. 1996).

The reasonable hourly rate is determined based on the rate charged in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *See Blum v. Stenson*, 465 U.S. 886, 895-96 n.11 (1984); *Heidtman v. County of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). The hourly rate must be "adequate to attract competent counsel," but the "measure is not the rates which lions at the bar may command." *Leroy v. City of Houston*, 906 F.2d 1068, 1079 (5th Cir. 1990). The applicant bears the burden of producing satisfactory evidence that the requested rate is aligned with prevailing market rates. Satisfactory evidence of the reasonableness of the rate necessarily includes an affidavit of the attorney performing the work and information of rates actually billed and paid in similar lawsuits. *Blum*, 465 U.S. at 896 n. 11. Mere testimony that a given fee is reasonable is not satisfactory evidence of a market rate. *See Hensley*, 461 U.S. at 439 n. 15. Rates may be adduced through direct or opinion evidence as to what local attorneys charge under similar circumstances. The weight the court will give to the opinion evidence is affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience; similarity of case and client; and breadth of the sample of which the expert has knowledge. The court may exercise its own expertise and judgment in making an independent valuation of appropriate attorney's fees. *Davis v. Board of Sch. Commissioners of Mobil County*, 526 F.2d 865, 868 (5th Cir. 1976). "There is a strong presumption of the reasonableness of the lodestar amount." *Black*, 732 F.3d at 502.

After calculating the lodestar, the court considers whether the lodestar amount should be adjusted upward or downward, depending on the circumstances of the case and the following factors:

12

(1) the time and labor required by the litigation; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the award in similar cases. *Heidtman*, 171 F.3d at 1043 n.5 (citing *Johnson v. Georgia Hwy. Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989)).

When a district court awards attorney's fees, the court must explain how these factors affect the award. *In re High Sulphur Content Gasoline Prods. Liability Lit.*, 517 F.3d 220, 228 (5th Cir. 2008). "The lodestar may not be adjusted to a *Johnson* factor that was already taken into account during the initial calculation of the lodestar." *Black*, 732 F.3d at 502.

The court is mindful of the Supreme Court's "important rules" regarding federal fee-shifting statutes. *Perdue*, 559 U.S. at 552-53. Of particular relevance here is that "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case" and observed that "the lodestar method yields a fee that is presumptively sufficient to achieve this objective." *Id.* at 552.

## WHOLE WOMAN'S HEALTH'S APPLICATIONS FOR ATTORNEY'S FEES AND NONTAXABLE EXPENSES AND THE STATE'S RESPONSES

Under the court's local rules, an application for attorney's fees

> shall include a supporting document organized chronologically by activity or project, listing attorney name, date, and hours expended on the particular activity or project, as well as an affidavit certifying (1) that the hours expended were actually expended on the topics stated,

and (2) that the hours expended and rate claimed were reasonable. Such application shall also be accompanied by a brief memo setting forth the method by which the amount of fees was computed, with sufficient citation of authority to permit the reviewing court the opportunity to determine whether such computation is correct. The request shall include reference to the statutory authorization or other authority for the request.

Loc. R. W.D. Tex. CV-7(j).

As a preliminary matter, the court finds that Whole Woman's Health has substantially complied with the court's local rule requiring that documentation accompany a request for attorney's fees. In fact, Whole Woman's Health has provided the court extensive documentation that addresses the attorneys' time and billing.

Initially, Whole Woman's Health requested attorney's fees of $4,392,655.50 and nontaxable expenses of $158,784.06.[7] The State objected to (1) the hourly rates requested, contending the requested rates far exceed the prevailing market rates in this district; (2) several of the requests are for non-compensable fees and expenses; (3) some of the time entries submitted reflect only limited billing judgment; (4) there are requests for many unnecessary and extravagant expenses; and (5) many of the time entries are described vaguely and are block-billed.[8]

By way of reply, Whole Woman's Health claims it should be awarded the amounts originally requested by its motion, plus an "additional $89,982.50 for work done since that motion was filed

---

[7] The amounts requested are: (1) for the Center, $2,754,503.00; (2) for Morrison & Foerster, $1,523,768.75; (3) for O'Connell & Soifer LLP, $111,231.25; and (4) for John H. Bucy II, $3,152.50.

The amounts requested for nontaxable expenses are: (1) for the Center, $70,462.41; (2) for Morrison & Foerster, $87,964.45; and (3) for Leah M. Litman, $357.20.

[8] The State's response includes 251 pages of charts, each having a line entry with one billing event claimed by Whole Woman's Health, and a column each for the date of the event, a description, the time spent in hours, and a challenge code.

and $11,358.70 [as additional nontaxable expenses] transferred from [Whole Woman's Health's] bill of costs."

After Whole Woman's Health replied to the State's objections, Whole Woman's Health submitted a supplemental application seeking attorney's fees and nontaxable expenses incurred after participating in an unsuccessful court-ordered mediation with the State on January 5, 2017, relating to the requested attorney's fees and expenses. Whole Woman's Health requests additional amounts of attorney's fees–for the Center, $5,400, for Morrison & Foerster, $9,203.75, and for O'Connell & Soifer, $1,700–and nontaxable expenses of $712.

The State objects to the supplemental application, arguing that the court should decline to award Whole Woman's Health any amount of the requested attorney's fees and nontaxable expenses incurred by complying with the court's order that the parties mediate the fee dispute.

**ATTORNEY'S FEE AWARD**

#### *Calculation of Lodestar*

Excluding the request for additional fees, Whole Woman's Health presents the court with a proposed lodestar based on the combined total of 6,043.65 hours expended on the case and an attorney's fee request of $4,498,941.75.[9] This results in a blended overall rate is $744 per hour. Having considered the entire record and the applicable law, the court concludes that Whole Woman's Health's proposed lodestar fails to reflect the market rate in this community for similar work and the court rejects Whole Woman's Health's proposal. The court will compute the lodestar and what constitutes a reasonable fee award. In so doing, the court will: (1) reconcile the disparities

---

[9] The court derives these numbers based on Whole Woman's Health's representations in its Motion for Attorney's Fees and the memorandum in support and its reply to the State's response.

between the parties' hours estimates and determine a reasonable number of hours expended on the case; and (2) determine a reasonable hourly rate for the time expended on the case.

### Reasonable number of hours expended on the case

"The starting point for determining a lodestar fee award is the number of hours 'reasonably expended on the litigation.'" *Hensley*, 461 U.S. at 433.  The court is not only required to determine whether the total hours claimed are reasonable, but also whether particular hours claimed were "reasonably expended." *DeLeon*, 687 Fed. Appx. at 343 (citing *Louisana Power & Light*, 50 F.3d at 324-25).  Whole Woman's Health's initially requested fees for a total of 5,946.25 hours. Additionally, Whole Woman's Health, by its reply to the State's response, seeks fees for preparing the reply to the State's response for an additional 97.5 hours.  Whole Woman's Health maintains that it exercised reasonable billing judgment by reducing its own time entries and eliminating categories of time before including each item in the request for fees.  Whole Woman's Health argues that all of the hours included in the fee request are reasonable.

Whole Woman's Health's supporting affidavits and declarations explain some of the time excluded from the fee request, but do not reflect how many hours were deducted or what specific categories of time were deducted.  This practice makes it difficult for the court to review whether the fee request demonstrates that counsel exercised adequate billing judgment.  The court will review the time requests based on what is included Whole Woman's Health's fee request and the reply.  The court proceeds to address the State's several objections that particular amounts of hours requested by Whole Woman's Health were not reasonably expended on the case.

The State complains about 598 hours billed for travel for attorneys at Whole Woman's Health's attorney's fee rate.  Time spent for travel should not be billed at the same hourly rate sought

16

for active legal work and should be reduced by 50 percent. *See Hopwood v. Texas*, 999 F.Supp. 872, 914 (W.D. Tex. 1998), *aff'd in part, rev'd in part, Hopwood v. Texas*, 236 F.3d 256 (5th Cir. 2000) (reducing attorney's fees for travel time by 50 percent). Having considered the matter, the court will reduce the hours requested related to attorney's fees while on travel by half. The court reduces the total hours requested by 299 hours.

The State complains that Whole Woman's Health overstaffed many depositions, trial, and appellate arguments at the circuit and the Supreme Court with attorneys who did not contribute to the record in this case. The State specifically contends that billing for attorneys attending depositions should be cut by 102.80 hours. Whole Woman's Health responds that the expedited schedule and the State's aggressive litigation tactics required Whole Woman's Health to utilize multiple attorneys working in concert to meet deadlines. Whole Woman's Health explains that 23 depositions and one supplemental deposition were taken in a 20-day period in 13 cities across eight states. The last of the depositions was taken on July 29, 2014, and trial commenced six days later. Having multiple attorneys present at depositions taken on consecutive days ultimately expedited discovery and saved money in travel expenses. Further, the second-chair attorneys were not passive observers at trial, but actively assisted the lead attorneys in taking and defending depositions, by suggesting follow-up questions and objections, conferring about strategy during breaks, and helping to manage exhibits. Additionally, Whole Woman's Health argues that the State also had multiple attorneys in attendance at depositions, trial, and the appellate arguments.

The parties waste the court's time. This case was massively over lawyered by both sides. Although the abortion debate is of paramount importance to an extremely large number of the population of this country and attracts a great amount of media attention, the constitutionality of

17

portions of a state statute is all that is at stake here. That is all this case is about. Effective access to the judicial process, as a concept, does not require the number of lawyers that were involved in this case. The court apportions the waste of time, talent, and treasure equally between the parties. Whole Woman's Health likely didn't need the number of lawyers involved in the case. Yet this court finds that the State's tactics compelled an increase in manpower by Whole Woman's Health. Both parties are culpable in driving the cost of this litigation to an extreme height, with the people of the State of Texas left to pay all of the expense of both sides. Having reviewed the supporting documents the court will not reduce Whole Woman's Health's hours on the grounds that they overstaffed depositions, trial, or oral arguments on appeal.

The State contends that 3.65 hours are double-billed. Here the court sniggers. It is pointless arguing over *de minimus* matters that have largely driven the cost of this case. The court finds that the supporting documents show that these hours are not duplicative.

The State contends that approximately 3,746.24 billed hours are vague and block-billed. The State argues that the court should reduce the total hours requested by 20 percent to account for these vague and block-billed entries. *See League of United Latin American Citizens v. Roscoe ISD*, 119 F.3d 1228, 1233 (5th Cir. 1997). Whole Woman's Health disagrees that its entries inadequately describe the tasks for which the billing relates. The court finds that Whole Woman's Health's entries are sufficiently detailed for the court to determine whether the hours claimed are reasonable. The court will not reduce the number of hours billed with an across-the-board discount for vague or block-billed entries.

The State also challenges Whole Woman's Health's request for 108 hours preparing the motion for attorney's fees. Primarily, the State complains that lead counsel for Whole Woman's

Health did not delegate the task of preparing the motion for attorney's fees, but instead two of the more senior attorneys prepared the bulk of the fee application and are charging their highest billing rate. *See, e.g., Leroy*, 906 F.2d at 1079 ("Certainly, the base rate for time spent on computing and enforcing attorneys' fees should be less than that allowed for professional services rendered primarily on the merits").

Whole Woman's Health responds that the more junior attorneys who had been involved and worked on the case had left the firm, and in light of the State filing an extreme number of objections to the fee request and the State's aggressive tactics, it made the most sense to Whole Woman's Health to have the senior attorneys address the objections raised by the State. The senior attorneys knew the case, and all that was involved, from the filing of the complaint through remand to this court. The court concludes that the 108 hours billed for preparation of the attorney's fees, nontaxable expenses, and costs will not be reduced.

Additionally, the court will allow Whole Woman's Health's request for 97.5 additional hours for work performed by its lead attorneys after filing the motion for attorney's fees.

The State objects that Whole Woman's Health's requested hours should be reduced as a matter of law for noncompensable time. The State contends that the hours requested should be reduced by 139 hours Morrison & Foerster billed for David Chan, the firm's senior e-discovery analyst. Paralegal work may only be recovered as attorney's fees if the work is legal rather than clerical. *See Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001).

The record reflects that Chan is a highly skilled professional with over 15 years of experience in the legal field, and he specializes in providing assistance with the production of documents and electronically stored information. He works under the supervision of Lawrence, a co-lead counsel,

19

and it is the regular practice of Morrison & Foerster to bill his time to fee-paying clients at the market rate. The court finds that Chan's 139 hours are reasonable and will allow recovery of Chan's hours.

The State also objects to the 7.05 hours billed for Whole Woman's Health's attorneys negotiating a settlement with the local prosecutor defendants and 5.45 hours spent preparing a notice of voluntary dismissal of Defendant Mari Robinson. The court disagrees that these hours should be disallowed. These hours were directly part of the litigation of the case, and yet another example of pointless arguing by the State of an issue that should have been resolved in mediation.

The State also objects to the 231.95 hours charged for purely clerical tasks. The court will deny this objection and allow the hours billed.

### Conclusion regarding reasonable hours expended on the case

Having reviewed the supporting materials the court will overrule the State's objections and allow Whole Woman's Health 5,744.65 hours for attorney's fees claimed through its motion for fees and reply.

### Reasonable hourly rate

Whole Woman's Health presents the court with a chart that sets forth the requested hourly rates for 18 attorneys and six support staffers for which it seeks fees for each of the years 2014, 2015, and 2016. For the attorneys, who have differing amounts of legal-practice experience, the hourly rates range from a high of $995 to a low of $265 per hour, and for support staffers from a high of $350 to a low of $210 per hour. Whole Woman's Health sets forth its lodestar attorney's fees amounts based on the proposed hourly rates, and each individual by a declaration or affidavit, explains that the amounts requested reflect the exercise of reasonable billing judgment. The court,

20

after considering the additional billing Whole Woman's Health claims in its reply for fees incurred in responding to the State's response and objections, calculates Whole Woman's Health's requested total lodestar amount as $4,482,638.00.

### *Whole Woman's Health's request for reasonable hourly rates for outside-district counsel*

Whole Woman's Health argues that it was necessary to hire out-of-state attorneys for this case as there were no available attorneys in Texas to bring this action. Whole Woman's Health argues that the record includes "abundant evidence" that the hiring of out-of-district counsel was necessary to secure adequate representation in this abortion-restriction constitutional challenge. This is hogwash.

Whole Woman's Health argues that as in *McClain v. Lufkin Indus., Inc.*, counsel had to be willing and able to take on a large, multi-year case without any guarantee of compensation. 649 F.3d 374, 381 (5th Cir. 2011). Additionally, Whole Woman's Health argues that this case focused on abortion rights, which are highly controversial in Texas, and the case required an expertise in constitutional abortion law, as it was known from the outset that the case likely would reach the Supreme Court. Further, there was adverse precedent on the central legal issue–whether the undue-burden standard permits a court to consider whether and to what extent an abortion restriction furthers its stated purpose–making the likelihood of success uncertain. *See Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 748 F.3d 594 (5th Cir. 2014). And finally, the case proceeded on an expedited schedule at all stages, which left the parties' attorneys with little time for other cases. Whole Woman's Health argues that their out-of-district counsel should therefore be compensated at their home rates–New York, District of Columbia, California, and Colorado–where

those rates are greater than the prevailing rates in this district.[10] They argue that the rates sought by O'Connell, Soifer, and Crepps are in line with the prevailing rates in Austin, Texas for similar services by lawyers of reasonably comparable skill, experience, and reputation during the relevant time period.

The State challenges Whole Woman's Health's contention that out-of-district counsel was necessary. Further, the State responds that lacking in the record is proper support for Whole Woman's Health's request for its out-of-district attorneys to be paid out-of-district hourly rates. The State is correct in both contentions.

"Reasonable fees" under Section 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel. *Blum*, 465 U.S. at 895. In general, the "relevant community" for purposes of determining prevailing market rates is the district in which the case was filed. *See McClain*, 649 F.3d at 381. When it is necessary, however, for plaintiffs to retain an attorney from outside the district to ensure that their interests are adequately represented, the attorney's "home" jurisdiction is the relevant community. *Id.* at 382 ("[W]here out-of-district counsel are proven to be necessary to secure adequate representation for a civil-rights plaintiff, the rates charged by that firm are the starting point for the lodestar calculation.").

"In an unbroken and consistent line of precedent, [the circuit] has interpreted rates 'prevailing in the community' to mean what it says. Thus, as early as 1974, the court required district courts to consider the customary fee for similar work 'in the community.'" *McClain*, 649 F.3d at 381. The

---

[10] Counsel for Whole Woman's Health contends that although they are entitled to apply their current rates retroactively to all time spent on the case, they seek only the rates that they actually charged clients in prior years to avoid any possibility of a windfall. *See Perdue*, 559 U.S. at 556.

*McClain* court recalled the circuit's decision in a landmark affirmative-action case reducing the fee of plaintiffs' counsel, a former United States Assistant Attorney General and subsequent United States Solicitor General, from the rates he charged in Washington, D.C., to the prevailing rate in the forum, Austin, Texas. *Id.* (citing *Hopwood*, 236 F.3d at 281 (discussing Theodore Olson's billing rates)).

The seven declarations from three lawyers representing Whole Woman's Health and four declarations from Texas-based lawyers discuss the need to hire out-of-district lawyers. Many of the declarations include similar statements that the authoring lawyer is unaware of other lawyers residing in the Western District of Texas that would have been willing and able to provide adequate representation because (1) many lawyers in Texas will not represent abortion providers; (2) some lawyers are reluctant to sue local or State government officials; (3) few lawyers are in a position to take on such an extensive engagement with short notice; (4) many lawyers are not willing or able to accept an engagement pro bono; and (5) many lawyers do not posses the expertise to litigate this type of case successfully.

As the State argues, these declarations, however, ignore the fact that since the year 2000, several Texas lawyers have served as lead counsel in challenging reproductive and abortion laws in Texas. This court's personal experience belies the declarations. There is no shortage of lawyers willing to sue the State of Texas. The State details counsel of record on Texas abortion-law challenges and highlights several Texas attorneys. And Texas has a long history with abortion-related cases. Almost 50 years ago, local Austin attorney Sarah Weddington was lead counsel of a team of Texas lawyers throughout all of the legal proceedings in *Roe v. Wade*, 410 U.S. 113 (1973), the case that establishes the right protected by the Supreme Court in this case.

The court concludes that Whole Woman's Health's declarations fail to state what measures were taken to find Texas lawyers and fail to show that no competent Texas lawyer was available. Toti's declaration asserts that, ""[d]espite diligent efforts" she experienced "immense difficulty" recruiting a lawyer admitted in the Western District of Texas to serve as local counsel. Yet, as noted by the State, Toti's billing records reflect only 7.9 hours of research and outreach to obtain a Texas lawyer. Further, Toti's declaration fails to explain: (1) why it was necessary to engage Morrison & Foerester, a "leading international law firm with over 1,000 lawyers," to assist with this case; and (2) whether she attempted to engage any less-expensive firms for the same work. The court finds no credibility whatsever in Whole Woman's Health's position.

The court's focus on local community rates, as in *Blum*, sets a floor for compensation, to emphasize that civil-rights litigation under a fee-shifting statute is not a *pro bono* enterprise. *McClain*, 649 F.3d at 383. "On the other hand, the statute's purposes are not fulfilled if counsel reap a windfall at the expense of a defendant by overcharging for their services. *Id.* (citing *Riverside v. Rivera*, 477 U.S. 561, 580 (1986) ("Congress intended that statutory fee awards be adequate to attract competent counsel, but not produce windfalls to attorneys.").

Here, the court takes no issue with the fact that Whole Woman's Health determined to engage out-of-district lawyers for legal representation. However, having considered all matters presented by the parties, the court concludes that the lawyers for Whole Woman's Health will be compensated at the community rates in this district and that those rates are reasonable. Fee shifting does not allow the prevailing party to recover attorney's fees based on its strategic employment decisions. The fee that is shifted is the reasonable fee for the work performed. A party who chooses to retain counsel at a rate it wishes to pay is responsible for the difference between that rate and a

reasonable rate. Fee shifting does not compel the agreed rate between client and counsel, only a reasonable rate.

### *Community rate*

Whole Woman's Health has submitted declarations of lawyers who practice regularly in the Western District of Texas. These declarations assert that the requested hourly rates fall within the range of hourly rates charged by lawyers of similar skill, experience and reputation in connection with civil-rights cases in this district. The State challenges Whole Woman's Health's hourly rates, contending that the requested hourly rates exceed the prevailing market rate in the Western District of Texas. The State requests that the court take judicial notice of the State Bar of Texas Department of Research and Analysis 2015 Hourly Fact Sheet ("Hourly Fact Sheet"), which judges in the district often utilize in determining the hourly rate for an attorney's fee award. *See e.g.*, *Alex v. KHG of San Antonio, LLC*, No. 5:13-CV-0728 RCL, 2015 WL 5098327, at *3 (W.D. Tex. Aug. 28, 2015).

The court has reviewed the supporting affidavits and disagrees that the requested rates producing Whole Woman's Health's lodestar amount reflect the prevailing market rates charged for similar services rendered in this district. The court has also considered the Hourly Fact Sheet. Although other courts in this district have relied exclusively on the rates reflected in the Hourly Fact Sheet, the court declines to adopt those rates as the definitive rates applicable in this case.[11] The court exercises its own expertise and judgment in making an independent valuation of the

---

[11]   The court takes judicial notice of the State Bar of Texas's Hourly Fact Sheet. *See* https://www.texasbar.com/AM/Template.cfm?Section=Demographic_and_Economic_Trends&Template=/CM/ContentDisplay.cfm&ContentID=34182 (last viewed August 8, 2019). The court affords little weight to the Hourly Fact Sheet, as only 1,411 attorneys in the Austin-Round Rock area responded to the survey out of 11,781 active members of the State Bar of Texas who reside in the area.

appropriate hourly rate for an award of attorney's fees. *See Davis*, 526 F.2d at 868. In doing so, the court turns to the applicable *Johnson* factors as a guide in determining the applicable lodestar rate for attorney's fees in this case. 488 F.2d at 717-19.

### *Johnson factors affecting hourly rates*

#### *Time and labor required by the litigation*

The court has reviewed the time and labor involved in the case and has determined that the hours expended are reasonable to litigate this matter over a period of three years.

#### *The novelty and difficulty of the questions*

The court finds that the questions presented in this case were not novel beyond what other district courts in the Western District of Texas have addressed in other cases challenging Texas laws as unconstitutional. *See e.g. DeLeon*, 687 Fed. Appx. at 340; *see also American Academy of Implant Dentistry v. Parker*, No. 1:14-CV-00191-SS, 2018 WL 401818 (W.D. Tex. Jan. 11, 2018) (finding $400 per hour an appropriate hourly rate for Austin, Texas). The claims at issue here are solely challenges to actions by the Texas Legislature. The issues, though emotionally charged, are neither difficult nor complex.

#### *The skill required to perform the legal services properly*

The court finds that Whole Woman's Health's counsel displayed commendable skill in the prosecution of this case.

#### *The preclusion of other employment by the attorneys due to acceptance of the case*

This case proceeded on an expedited schedule. During the pendency of the case in this court, the lead attorneys and other counsel had little to no time available to work on other cases.

### *The customary fee and whether the fee is fixed or contingent*

This action, a civil-rights case, has no customary fee.

### *Time limitations imposed by the client or circumstance*

As mentioned, the case proceeded in this court in an expedited fashion. The case filed in April 2014 challenged laws with effective dates of September 2014.

### *The amount involved and the results obtained*

Ultimately, Whole Woman's Health prevailed and the laws at issue were permanently enjoined.

### *The experience, reputation, and ability of the attorneys*

The attorneys who worked on this case had a wide range of legal-practice experience. Indeed, the parties do not dispute Bucy's hourly rate of $325. It does not escape the court that Bucy, a partner in an Austin law firm, is the most senior attorney for Whole Woman's Health, having graduated from law school in 1981. Yet, Whole Woman's Health seeks an hourly rate for some of its attorneys at more than double this rate.

### *The undesirability of the case*

The court finds this factor neutral.

### *The nature and length of the professional relationship with the client*

The court finds this factor neutral.

### *Awards in similar cases*

The court has reviewed other constitutional challenges within the Western District of Texas and has considered the hourly rates for attorney's fees awarded in those cases.

*Reasonable hourly rate*

Having considered the parties' positions and arguments, the *Johnson* factors, the court's knowledge of the case, the court's knowledge of the legal community in the Western District of Texas, and the hourly rates charged by Austin attorneys, the court concludes that an hourly rate of $400 is reasonable in this case. Although this is not the rate which "lions at the bar may command," the rate is adequate to attract competent counsel. *Leroy*, 906 F.2d at 1079.

In considering the *Johnson* factors, the court is again struck by the unreasonableness of the parties regarding the reasonableness of legal fees. The court is drawn to *Cole v. Collier*. No. 4:14-CV-1698, 2018 WL 2766028 (S.D. Tex. June 8, 2018). *Cole* is a class-action case by inmates of the Texas prison system seeking relief from high summer temperatures for inmates at a geriatric and medical Texas prison. There the State of Texas and the plaintiffs were able to reach a settlement of the entire case. The court will not review all of the facts here, but the settlement ended "four years of contentious litigation," with class-counsel's agreed hours being 10,298.50 at a rate, which the parties and the court found reasonable, of $436.95 per hour. The court here questions which of the parties before this court was most unreasonable. There simply is no reason why the parties here, had they behaved in a reasonable and professional manner, could not have reached an agreement. This court expects a higher standard from those who practice before it.

**Whole Woman's Health's Supplemental Application for Attorney's Fees and Costs**

Also pending before the court is Whole Woman's Health's supplemental application for additional attorney's fees in the amount of $16,303.75, and nontaxable expenses in the amount of $712. Whole Woman's Health incurred these additional amounts in an unsuccessful attempt to mediate issues related to their requested attorney's fees, nontaxable expenses, and costs incurred in

28

this action.  Specifically, Whole Woman's Health requests another set of attorney's fees–for the Center, $5,400, for Morrison & Foerster, $9,203.75, and for O'Connell & Soifer, $1,700–and nontaxable expenses of $712.

The State objects to the supplemental application, arguing that the court should decline to award Whole Woman's Health any of these amounts, which were incurred by complying with the court's direction that the parties attempt to mediate the fee dispute.

After Whole Woman's Health filed the first motion for attorney's fees and before the State filed its response, the court conferred with the lawyers for all parties.  At the conference, the court inquired if the parties had attempted to settle their disputes regarding attorney's fees and costs.  The parties informed the court that amongst themselves, they had failed to settle their disputes.  Providing the parties with another opportunity to resolve their disputes without additional court intervention, the court ordered the case to mediation.  Although the parties agreed to a mediator and attended a mediation, they did not resolve any attorney's fees issue.

The court finds nothing in the record to support shifting the attorney's fees and expenses Whole Woman's Health incurred in participating in the mediation to the State.  Whole Woman's Health's request for fees and nontaxable expenses related to the mediation will be denied.  Each party will bear its own fees and costs associated with the failed mediation.

### The court's lodestar amount of attorney's fees

In conclusion, the court calculates the lodestar figure using as the reasonable hours expended on the case, which the court finds to be 5,744.65, multiplied by a reasonable hourly rate, which the court has determined to be $400.  The court finds the lodestar figure for Whole Woman's Health attorney's fees to be $2,297,860.  The court also concludes that no further adjustments using the

*Johnson* factors need be made as the court considered all applicable factors in reaching the lodestar rate calculations.

## NONTAXABLE EXPENSES

"All reasonable out-of-pocket expenses, including charges for photocopying, paralegal assistance, travel, and telephone are plainly recoverable in section 1988 fee awards because they are part of the costs normally charged to a fee-paying client." *Associated Builders & Contractors of La., Inc. v. Orleans Parish Sch. Bd.*, 919 F.2d 374, 380 (5th Cir. 1990). The determination whether a particular expense is reasonable "is committed to the sound discretion of the trial judge." *Id.*

Whole Woman's Health seeks nontaxable litigation expenses for the Center in the amount of $70,462.41, for Morrison & Foerster in the amount of $87,964.45, and for Leah M. Litman in the amount of $357.20. The State objects to several nontaxable expenses incurred by the Center and Morrison & Foerster as unduly extravagant, too vague to assess and properly award the requested amount, or as noncompensable as a matter of law. The State also objects to nontaxable expenses incurred by Leah Litman as unnecessary, as she was only a passive observer at oral arguments.

### *Expenses challenged as extravagant and unnecessary*

The State objects to the Center's and Morrison & Foerster's hotel stays at Austin's downtown Hilton, Westin, and Omni, and Washington D.C.'s Liaison as luxurious and extravagant expenses. Based on counsel's declarations in support of the requests, the court finds that they made reasonable choices in hotels based on price, proximity to the court or deposition location, availability of rooms, and availability of features needed for their work. The State provides the court with no proof that the cost of the hotels incurred by the Center and Morrison & Foerster was above-average for downtown Austin in 2014, or that less-expensive alternatives were available on the nights at issue.

*See United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 574 (5th Cir. 2005). The court will allow these nontaxable expenses.

The State objects to a meal shared by four individuals at the Four Seasons Hotel in Austin which totaled $128.26. This meal was described by the Center as a meal with the client and local counsel to discuss next steps and to discuss the district-court hearing. The meal resulted in a cost of $32.07 per person. The court does not find that to be an extravagant price for a dinner in Austin.

Additionally, the State objects to the Center's nontaxable expense request consisting of 8 receipts totaling $601.26 for meals that included alcohol purchases. In reviewing the billing, in several instances attorneys did not seek reimbursement for their alcoholic beverages. The times that alcoholic beverages are included in the request, alcohol was only a small portion of the requested meal amount. These expenses will be allowed.

### Expenses challenged as incurred by passive observers

The State objects to the Center's and Morrison & Foerster's claims for expenses incurred by attorneys whom the State argues were passive observers at court appearances and depositions. As passive observers, the State argues that not only should their billed hours be disallowed, so should their costs of travel.

Regarding the alleged passive observers at trial, Whole Woman's Health does not seek a fee award for Natasha Bannan's time, only her travel expenses. Whole Woman's Health argues that Bannan was an active participant in the proceedings and served as the translator between expert witness Lucy Felix and the other attorneys. Bannan also assisted at other depositions, client meetings, and trial. The court will allow Whole Woman's Health to recover expenses for Bannan in the amount of $2,958.82.

The State complains about expenses requested for Morrison & Foerster associates Betre Gizaw and Colin O'Brien. These attorneys were present at trial, and although they did not examine witnesses, they assisted with witness preparation, took notes of the proceedings for use by the attorneys who were conducting the examinations, and managed trial exhibits. They also assisted with document productions that the State presented Whole Woman's Health on the eve of trial and during trial, most of which related to Vincent Rue, and they made sure that counsel incorporated the information they learned into their examinations. The court observes that Whole Woman's Health and the State had roughly the same number of attorneys in the courtroom for trial. The State also had attorneys in attendance for trial who did not examine witnesses or otherwise participate on the record. The court will allow expenses incurred by Morrison & Foerster for Gizaw and O'Brien.

The State complains about expenses for passive observers who attended depositions. The State argues that their expenses should be disallowed because these individuals did not participate in questioning the deponent. Again, Whole Woman's Health responds that these attorneys and paralegals were not passive at the depositions. Whole Woman's Health explains that the depositions these individuals attended were contentious, and during the depositions, counsel went off the record for long periods of time to negotiate the resolution of objections. Whole Woman's Health notes that the State also sent three attorneys to each of the Rule 30(b)(6) depositions. The court will allow these expenses.

The State complains about passive observers who attended oral arguments at the Fifth Circuit and the Supreme Court, including expenses incurred by David Brown and Rupali Sharma for the Center and Leah Litman. Brown and Sharma assisted in mooting Toti for arguments in the Fifth Circuit and at the Supreme Court up until the night before each argument. The court finds it was

reasonable to have them attend both arguments and their travel expenses will be allowed. Additionally, given that Litman is a former Supreme Court Clerk, and her role in the lawsuit was to advise Whole Woman's Health's counsel about Supreme Court practice, it is reasonable that her expenses incurred to attend oral arguments be recoverable nontaxable expense. The court will allow Litman's $134.20 travel expenses to attend the Supreme Court arguments.

### Expenses challenged for vagueness

The court "may properly reduce or eliminate hours when the supporting documentation is too vague to permit meaningful review." *Louisiana Power & Light Co.*, 50 F.3d at 326. The State contends that numerous expenses fall within this vagueness category. Specifically, the State complains about expenses for conference calls, internet service during travel, word-processing services, and others expenses of this type. The State argues that there is nothing indicating that the charges incurred relate to this case, as lacking are specifics about the exact identities of each of the entries. Additionally, the State argues these expenses for technical work or other similar work that may be performed by support staff are within the overhead component of the lawyer's fee and should not be separately billed. Also, the State complains that several expenses are supported only by a credit-card statement, which it contends is inadequate to support the expense as reasonable and related to the case.

Whole Woman's Health responds that the supporting declarations and the timing of the expenses, establish that these expenses are reasonable and related to this case. Further, Lawrence's declaration establishes that these expenses are of the type that Morrison & Foerster typically bill their clients and are not part of the firm's office overhead. The court finds that these expenses are reasonable and related to the case. The court will allow these expenses.

33

The State complains that absent specificity Westlaw and LexisNexis charges are not compensable. The State does not complain about the total time and charges for electronic legal research, only particular expense entries, which the State contends are insufficiently detailed. In reviewing the supporting declarations and record as a whole, the electronic legal research fees incurred were reasonable and related to the case.

The State also complains about expenses it categorizes as "overhead expenses," including shipping, postage, office supplies, PACER charges, and case-tracking fees. Again, the declarations supporting the expenses explain that these are charges that the firm routinely charges their fee-paying clients and are not overhead. Given the state of the record, the court will allow these expenses.

The State challenges the expenses incurred for private process servers contending there is no proof of exceptional circumstances warranting recovery of costs associated with private service of process. Although showing exceptional circumstances may be necessary to recover private-process-server fees under Title 28 United States Code section 1920, such fees may be recovered as a matter of course under Title 42 United States Code section 1988(b) because they "are part of the costs normally charged to a fee-paying client." *Associated Builders & Contractors of La., Inc.*, 919 F.2d at 380. The court will allow these expenses.

The State challenges the expense of $450.00 by Morrison & Foerster for the use of E-discovery, contending the expense is noncompensable. *See Structural Metals, Inc. v. S & C Elec. Co.*, No. SA-09-CV-984-XR 2013 WL 3790307 (W.D. Tex. July 19, 2013). In *Structural Metals*, the court did not allow the attorney's fee request because the record lacked any support showing that the individual claiming the expense for E-discovery was qualified or had experience to perform the work. *Id. Structural Metals* did not address out-of-pocket expenses related to electronic discovery

or hold that such expenses are noncompensable as a matter of law.  Here, the supporting declarations reflect that such expenses are traditionally charged to Morrison & Foerster's fee-paying clients.  The court will allow this expense.

### Printing expenses related to Supreme Court materials

Whole Woman's Health requested as taxable costs $11,358.70.  *See infra* p. 40.  The court will disallow this amount as a taxable cost, but holds that it is a recoverable amount as a nontaxable expense.  The court includes the amount of $11,358.70 as a recoverable nontaxable expense to Whole Woman's Health.

### Conclusion regarding nontaxable expenses

Having reviewed Whole Woman's Health's motion and supporting documentation, the State's response, objections, and supporting documentation, and Whole Woman's Health's reply, the court  concludes that all of Whole Woman's Health's requests are "reasonable out-of-pocket expenses" that would normally be charged to a fee-paying client and are, thus recoverable as part of Whole Woman's Health's attorney's fees. *Associated Builders & Contractors of La., Inc.*, 919 F.2d at 380.  Accordingly, the court will award Whole Woman's Health nontaxable litigation expenses in the amount of $170,142,76.[12]

## REQUEST FOR ATTORNEY'S FEES FOR FUTURE WORK

Whole Woman's Health also requests the court award it attorney's fees in an undetermined amount for any future work that Whole Woman's Health may be required to perform in the case.

---

[12]  The supporting documentation relates to this amount as $70,462.41 for the Center; (2), $87,964.45 plus $11,358.70, for a total of $99,323.15 for Morrison & Foerster; and (3) $357.20 for Leah M. Litman.

The court will deny this request without prejudice. The court will take up issues related to any additional requests for attorney's fees and nontaxable expenses as the need arises.

## COSTS OF COURT

Whole Woman's Health filed a Bill of Costs on October 21, 2016, seeking $107,560.63 as costs of suit (Clerk's Document No. 274). *See* 28 U.S.C. § 1920 ("Section 1920"); Fed. R. Civ. P. 54(d)(1). The State filed many objections to the bill on November 14, 2016 (Clerk's Document No. 282), to which Whole Woman's Health responded on December 5, 2016 (Clerk's Document No. 285). After agreeing to make some adjustments to the bill, Whole Woman's Health seeks $95,872.80 as costs of suit.

The court's discretion in taxing costs against an unsuccessful litigant is limited to the following recoverable costs:

(1)    Fees of the clerk and marshal;

(2)    Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3)    Fees and disbursements for printing and witnesses;

(4)    Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5)    Docket fees under section 1923 of this title; and

(6)    Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

36

28 U.S.C. § 1920. Although a district court may decline to award costs listed in the statute, it may not award costs omitted from the statute. *See Crawford*, 482 U.S. at 441-42; *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 891 (5th Cir. 1993).

Moreover, "[i]tems proposed by winning parties as costs should always be given careful scrutiny." *Louisiana Power & Light Co*, 50 F.3d at 335 (quoting *Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 235 (1964)). The party seeking costs bears the burden of supporting its request with evidence documenting the costs incurred and proof, when applicable, that a certain item was necessarily obtained for use in the case. *See Fogleman v. ARAMCO*, 920 F.2d 278, 285-86 (5th Cir. 1991); *Casarez v. Val Verde Cty.*, 27 F. Supp. 2d 749, 751 (W.D. Tex. 1998). This is a factual determination to be made by the district court. *See Fogleman*, 920 F.2d at 285-86.

The State raises objections to portions of three categories of Whole Woman's Health's bill: (1) fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (2) fees and disbursements for printing and witnesses; and (3) fees for exemplification and copies of papers necessarily obtained for use in the case. The State argues that Whole Woman's Health should recover no more than $67,672.79 in costs. The court addresses each of the challenged requests by the Section 1920 categories.

**Fees for printed or electronically recorded transcripts necessarily obtained for use in the case—Section 1920(2)**

Whole Woman's Health seeks $24,001.48 in costs that fall within this Section 1920 category. *See* 28 U.S.C. § 1920(2). The State contends this amount should be reduced to no more than $8,728.51.

37

*Transcripts of court proceedings*

The State objects to the request for $237.65 for the transcript of the court's hearing on the request for a temporary restraining order, contending that it was not necessarily obtained for use in the case. Whole Woman's Health responds that it utilized this transcript several times throughout the proceedings, including the opening brief to the Supreme Court, because it included several admissions by the State related to the State's *res judicata* defense. The court agrees with Whole Woman's Health and this objection is overruled.

The State objects to the requests for costs of expedited daily trial transcripts of the first four trial days, from August 4 through 7, 2014, in the amount of $1,257.90. Whole Woman's Health responds that the daily transcripts were necessary as they were needed by Whole Woman's Health so that Whole Woman's Health could cite to trial testimony from those days in post-evidentiary briefing, which was due August 12, 2014, the day before closing arguments were scheduled. *See Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 713 F.2d 128, 133 (5th Cir. 1983) (to award daily transcripts court makes factual finding that they were necessarily obtained for use in this case). Had Whole Woman's Health opted for any other delivery option for these transcripts, they would not have been delivered and received in time to prepare the requested briefing for the court. The court finds that the daily trial transcripts were primarily and necessarily obtained for use by Whole Woman's Health in the case. This objection is overruled.

The State objects to the requests for incidentals related to deposition transcripts, including expedited delivery charges, electronic transcripts, and scanned exhibits. Additionally, the State objects to the request for $88.13 for an inadvertent deposition overbilling by TSG Reporting, Inc. for Invoice Nos. 072514-324094 and 072514-324141.

Whole Woman's Health responds that these incidental costs were necessary because of the expedited trial schedule. There were 24 depositions taken in 20 days around the country, followed six days later by the start of trial. It was necessary to get the deposition transcripts and related exhibits immediately so that counsel could review them and incorporate any relevant information into the next day's depositions or trial testimony. Additionally, Whole Woman's Health responds that had the State reached out to discuss the overcharge of $88.13, Whole Woman's Health would have withdrawn that request.

The court finds and concludes that the incidental costs related to deposition transcripts, including expedited delivery charges, electronic transcripts, and scanned exhibits, were necessarily obtained by Whole Woman's Health for use in the trial of the case. Those objections are overruled. Whole Woman's Health agrees to deduct or withdraw its request for $88.13 for the inadvertent deposition overbilling by TSG Reporting, Inc. for Invoice Nos. 072514-324094 and 072514-324141. In light of Whole Woman's Health's withdrawal of the request for this cost, the bill is reduced by $88.13. The State's objection to the $88.13 overcharge is rendered moot.

**Fees and disbursements for printing and witnesses—Section 1920(3)**

Whole Woman's Health seeks $24,489.12 in costs attributable to printing, and $9,209.55 in costs attributable to witnesses that fall within this Section 1920 category. *See* 28 U.S.C. § 1920(3). The State contends the total amount for this category of costs should be reduced to no more than $9,256.83.

### *Printing*

The State objects to many printing costs contending that they should be disallowed due to lack of documentation, vagueness, or noncompensability.

The State objects to the requests totaling $11,358.70 for "Printing by COCKLE LAW BRIEF PRINTING CO." that includes printing costs for Whole Woman's Health's "cert petition and appendix," "cert petition reply," "SCOTUS brief for petitioners," and "SCOTUS reply brief." *See* U.S. Sup. Ct. R. 43(3) ("expenses of printing briefs, motions, petitions, or jurisdictional statements are not taxable"). Whole Woman's Health concedes this objection, but argues that it may recover these costs as reasonable, out-of-pocket expenses, as these are expenses generally charged by attorneys to their fee-paying clients. *See* 42 U.S.C. § 1988(b); *Associated Builders & Contractors, of La., Inc.*, 919 F.2d at 380.

The court finds and concludes that Whole Woman's Health's request for a total of $11,358.70 for printing costs for Whole Woman's Health's "cert petition and appendix," "cert petition reply," "SCOTUS brief for petitioners," and "SCOTUS reply brief" will be disallowed. The court will grant the State's objection, and the bill will be reduced by $11,358.70. The court also finds and concludes that these amounts are recoverable by Whole Woman's Health as out-of-pocket expenses under Title 42 United States Code section 1988(b), and the court will so allow.

The State objects to the costs requested by Whole Woman's Health on behalf of the law firm of Morrison & Foerster, designated as "Printing," and "documents needed for trial," which were incurred on August 26, 2014, in the amount of $8,807.18. The State also objects to the request for costs of binders and tabs on August 4, 2014. The State argues that these sums were spent on non-printing supplies, such as 3-ring binders, manila folders, and tabs, and should be disallowed as they are office supplies which are overhead expenses typical to any law practice.

Whole Woman's Health responds that the fees the State characterizes as incidental, amount to $1,445.91, out of the August 26, 2014 total printing billing for $8,807.18. Whole Woman's

40

Health responds that the incidentals of $1,445.91 were costs incurred in putting together their over 200 trial exhibits. Given how voluminous the exhibits were and the expedited pace of proceedings in this case, Whole Woman's Health was unable to separate the act of printing them from the act of tabbing and binding them; it was an integrated process. The court agrees with Whole Woman's Health and will allow the incidentals to printing in the amount of $1,445.91 out of the August 26, 2014 billing. The court also allows Whole Woman's Health the balance of the August 26, 2014 billing. The State's objection to this billings is overruled.

The State objects to a bill for $170.81 for Federal Express Overnight delivery by which copies of Whole Woman's Health's trial exhibits were sent to its counsel in New York and to the State's attorneys. Given the expedited nature of this case, the court finds and concludes that overnight delivery was a necessity, not a convenience. The State's objection to this expense is overruled.

The State objects to bills in the amounts of $155.59 on July 18, 2014, and $25.00 on July 24, 2014, each designated as "Printing" and further described as "Printing in Omni Hotel Business Center; documents needed for TMB and DSHS depositions." The State contends that as these amounts are not supported by receipts, the amount of $180.59 should be disallowed unless Whole Woman's Health can provide sufficient supporting documentation. The court finds that there are adequate explanations for these costs–Bates number MoFoExp 0000004 and MoFoExp 0000005. The court will allow these printing expenses. The State's objections to these bills are overruled.

### *Witnesses*

The State objects to Whole Woman's Health's request for fees for witnesses as to all costs associated with deposition expenses for individuals identified in Whole Woman's Health's itemized

lists of costs as L. Felix, Hopkins, A. Layne-Farrar, P. Fine, Grossman, E. Raymond, and Johannes. The State contends that a prevailing party cannot recover as an item of costs deposition expenses for witnesses who testified for the prevailing party at trial. As authority, the State cites, *United States v. Bexar County*, 89 F.R.D. 391 (W.D. Tex. 1981). Whole Woman's Health responds that the *Bexar County* case is not on point. And further, here, although the persons listed testified for Whole Woman's Health, the depositions they attended were noticed by the State.

"[A] witness in attendance at any court of the United States or . . . before any person authorized to take his deposition pursuant to any rule or order of a court of the United States, shall be paid the fees and allowances provided in this section." 28 U.S.C. § 1821(a)(1). The court will allow these statutory deposition fees and expenses for witnesses L. Felix, Hopkins, A. Layne-Farrar, P. Fine, Grossman, E. Raymond, and Johannes. The State's objection to these fees is overruled.

The State objects to travel-expense charges of change fees, early-bird check-in fees, travel-agency service fees, and tips to common carriers. Whole Woman's Health responds that regarding change fees, only one of Whole Woman's Health's witnesses paid a change fee, and that was because the witness concluded his testimony a day early. By paying the change fee, a hotel overnight stay for the witness was avoided. The court will allow the change fee as a cost. The State's objection to change fees is overruled.

> A witness who travels by common carrier shall be paid for the actual expenses of travel on the basis of the means of transportation reasonably utilized and the distance necessarily traveled to and from such witness's residence by the shortest practical route in going and returning from the place of attendance. Such a witness shall utilize a common carrier at the most economical rate reasonably available. A receipt or other evidence of actual cost shall be furnished.

28 U.S.C. § 1821(c)(1). The court finds that considering the means of transportation reasonably utilized and the distance necessarily traveled by the witnesses, early-bird check-in fees, travel-agency service fees, and tips to common carriers incurred in this action are actual expenses of travel. These expenses may be recovered as costs. The State's objection is overruled.

The State also objects to expenses for witnesses receiving more than 75 percent of their total "meal and incidental" on the first and last day of travel. *See General Services Administration's Meals and Incidental Expenses Breakdown* available at http//www.gsa.gov/portal/content/101518. In Austin, the *per diem* daily rate was $71 per day in 2014. At 75 percent the maximum recovery for *per diem* meals for witnesses on the first and last day of travel is $53.25 per day. The State requests a reduction for witness meals and incidentals.

Whole Woman's Health responds and agrees with the State that the request for fees for meals and incidental expenses for the first and last days of travel should be reduced so that the maximum recovery for *per diem* meals for witnesses on the first and last day of travel is $53.25 per day. Whole Woman's Health's request to reduce the bill of costs by $241.00 is granted. In light of Whole Woman's Health reducing its request as to this matter, the State's objection is rendered moot.

**Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case—Section 1920(4)**

Whole Woman's Health seeks $183.33 in costs attributable to copying that fall within this Section 1920 category. *See* 28 U.S.C. § 1920(4). The State contends that the total amount for this category of costs should be disallowed.

The State objects to copying costs requested in the amount of $188.33. The State contends that these costs include vague descriptions and appear to be part of the law firm's overhead. Whole

Woman's Health responds that as explained by Lawrence in his supplemental declaration, these costs are not part of the law firm's overhead. In reviewing the supporting documents, the copying charges appear under the account titled "Whole Woman's Health (P) / Texas Statute." The court finds that this is some evidence that the copies were necessarily obtained for use in the case. The court allows this request, and the State's objection is overruled.

***Conclusion regarding costs***

Having considered the State's objections to the bill of costs, Whole Woman's Health's responses, and the applicable law, the court allows the bill of costs with the following adjustments:

The bill of costs is reduced as the result of the overcharge by TSG Reporting, Inc. by $88.13. *See* 28 U.S.C. § 1920(2). Additionally the bill of costs is reduced as a result of disallowed requests for printing of matters submitted to the supreme court by $11,358.70. *See* 28 U.S.C. § 1920(3). With regard to this amount, Whole Woman's Health may recover the $11,358.70 amount from the State as an out-of-pocket nontaxable expense. *See* 42 U.S.C. § 1988(b). The bill of costs is also reduced as a result of overcharges related to meals and incidental expenses for witness fees for the first and last days of travel in the amount of $241.00. *See* 28 U.S.C. § 1920(3). The court offers the following summary of the taxable costs allowed for Whole Woman's Health's Bill of Costs.

| COSTS | AMOUNT SOUGHT | AMOUNT ALLOWED |
|---|---|---|
| Fees of the clerk and marshal | $400.00 | $400.00 |
| Fees for printed or electronically recorded transcripts | $24,001.18 | $23,913.05 |
| Fees for printing and witnesses | $33,698.67 | $22,098.97 |
| Fees for exemplification and copies | $183.33 | $183.33 |
| Fees for interpretation services | $450.00 | $450.00 |

| | | |
|---|---|---|
| Costs taxed by Court of Appeals and Supreme Court | $48,827.45 | $48,827.45 |
| **TOTAL** | $107,560.63 | $95,872.80 |

## CONCLUSION

The court awards Whole Woman's Health, the prevailing party in this Section 1983 action, reasonable attorney's fees. 42 U.S.C. § 1988; *Universal Amusement Co., Inc. v. Vance*, 587 F.2d 159, 172 (5th Cir. 1978). In determining the amount of those fees, the court rejects Whole Woman's Health's proposed hourly rate and lodestar figure and has engaged in the circuit's two-step process; first, calculating the number of hours Whole Woman's Health reasonably expended on the case, and second, determining an appropriate hourly rate based on what lawyers of reasonably comparable skill, experience, and reputation charge for similar work in Austin, Texas. The court has considered the *Johnson* factors in calculating the hourly rate and the number of hours reasonably expended on the case.

Having considered the entire record and the applicable law, Whole Woman's Health's Plaintiffs' Motion for Attorney's Fees filed October 6, 2016 (Clerk's Document No. 245) will be granted in part and to the extent that Whole Woman's Health shall recover from the State attorney's fees in the amount of $2,297,860, which is based on 5,744.65 hours at $400 per hour, and nontaxable expenses in the amount of $170,142.76. The court awards no specific amount to any attorney. The court concludes the total award is a reasonable fee for all legal services incurred by Whole Woman's Health.

The court denies Whole Woman's Health's request for future attorney's fees in an undetermined amount. The court will address any future issues regarding attorney's fees and nontaxable expenses as the need arises. Whole Woman's Health's Plaintiffs' Supplemental

45

Application for Attorney's Fees and Costs filed January 1, 2017 (Clerk's Document No. 287) will be denied. Additionally, Whole Woman's Health shall recover from the State, its costs requested by the Bill of Costs in the amounts set forth in the chart above.

**IT IS ORDERED** that Plaintiffs' Motion for Attorney's Fees (Clerk's Document No. 245) is **GRANTED IN PART** and to the extent that pursuant to Title 42 United States Code section 1988(b), Plaintiffs shall recover as costs from the Defendants John Hellerstedt, M.D. Commissioner of the Texas Department of State Health Services and Stephen Carlton, Executive Director of the Texas Medical Board in their official capacities, attorney's fees in the amount of $2,297,860 and nontaxable expenses in the amount of $170,142.76. In all other respects, the motion is **DENIED**. Specifically with regard to Plaintiffs' request in their motion for an award of future attorney's fees in an undetermined amount, the court denies the request and will address future requests for fees and expenses, if any, as the need arises.

**IT IS FURTHER ORDERED** that Plaintiffs' Supplemental Application for Attorney's Fees (Clerk's Document No. 287) is **DENIED**. The parties each bear their own fees and expenses related to the mediation conducted on January 5, 2017.

**IT IS FURTHER ORDERED** that Plaintiffs shall recover from Defendants John Hellerstedt, M.D. Commissioner of the Texas Department of State Health Services and Stephen Carlton, Executive Director of the Texas Medical Board in their official capacities, their costs as requested by the Bill of Costs (Clerk's Document No. 274) but only to the extent set forth in this order.

SIGNED this _____ day of August, 2019.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE